UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHAWN MACKEY                                                                              PLAINTIFF

V.                                                           CIVIL ACTION NO. 3:23-CV-233-DPJ-FKB

JOHN PIGOTT, ET AL.                                                                    DEFENDANTS

ORDER

This employment dispute is before the Court on five motions to dismiss [8, 10, 19, 21, 32]. The Mississippi Community College Board (MCCB) and its members, all Defendants here, say Plaintiff Shawn Mackey's claims must be dismissed based on Eleventh Amendment immunity and for failure to state a claim. The individual defendants also assert qualified immunity as to any individual-capacity claims. For the reasons discussed below, MCCB's motions are granted; the individual defendants' motions are granted in part and denied in part.

I.      Background

According to the Complaint, MCCB has employed Mackey, a Black male, for 16 years. Compl. [1] ¶ 18. Throughout that span, Mackey held numerous leadership positions and supervised every department in the agency except the finance division, though he worked closely with that department too. *Id.* Mackey currently serves as Deputy Executive Director for Accountability; he holds an Ed.D. in Higher Education Administration and a M.Ed. in Social Science Education. *Id.*

On October 16, 2015, MCCB selected Andrea Mayfield—a white female—as its Executive Director. *Id.* ¶ 19. Mackey was a finalist for this position. *Id.* Mayfield succeeded Eric Clark, a white male, and indeed MCCB has never hired a Black candidate as Executive

Director in its 36-year history.  *Id.*  When Mayfield resigned on July 16, 2021, that position was again vacant.  *Id.* ¶ 20.

That same day, MCCB appointed Kell Smith, a white male, as interim Executive Director.  *Id.* ¶ 21.  Smith had served as Director of Communications and Legislative Services since 2008.  *Id.*  Smith had no doctorate, no experience in higher education, and no record of supervising employees—all minimum job qualifications.  *Id.*  Based on the historical minimum qualifications for the Executive Director position (Mackey identifies six), Smith satisfied only one—"proficiency in working with federal and state policymakers."  *Id.* ¶¶ 23, 25.  Smith also had no experience performing any of the 12 duties described in the position's job posting.  *Id.* ¶ 25.  In fact, Smith announced to MCCB and colleagues that he lacked the requisite knowledge and experience to serve in the position.  *Id.*

On July 23, 2021, Mackey contacted board chair John Pigott to ask for a meeting to express his interest in becoming Executive Director.  *Id.* ¶ 22.  Pigott refused to meet with Mackey but solicited a written strategic vision from him.  *Id.*  Mackey submitted one, but neither Pigott nor any other board member contacted Mackey to discuss it or his interest in the position.  *Id.*

On August 4, 2021, Mackey announced to the board that he was interested in becoming Executive Director and submitted letters of support outlining his qualifications.  *Id.* ¶ 26.  The board informed Mackey that, despite his qualifications, they wished to keep the position open.  *Id.* ¶ 27.  Then, in January 2022, the board changed the minimum qualifications for the position to require only a master's degree in any field and "experience in administration, leadership, and engagement at regional, state, or national levels."  *Id.* ¶ 28.  A year later, MCCB unanimously named Smith Executive Director.  *Id.* ¶ 30.

Mackey believes he was more qualified than Smith and was denied the position based on race. *Id.* ¶ 30. He therefore sued MCCB and its board members for racial discrimination under 42 U.S.C. § 1981 and the Fourteenth Amendment's Equal Protection Clause—both brought through 42 U.S.C. § 1983. Mackey asks for damages and prospective relief through instatement to the executive director position and front pay.[1] *Id.* at 8. MCCB and its members now seek dismissal; the motions are fully briefed, and the Court has federal-question jurisdiction.[2]

II.     Standard

Defendants argue that the Eleventh Amendment bars Mackey's claims against MCCB and the individual defendants in their official capacities. They therefore challenge the Court's subject-matter jurisdiction under Rule 12(b)(1). Otherwise, they claim Mackey fails to state a claim under Rule 12(b)(6).

  A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject[-]matter jurisdiction when the [C]ourt lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "Lack of subject[-]matter jurisdiction may

---

[1] Mackey's Complaint requests reinstatement. Later, Mackey clarifies that this was a typo and the facts in the Complaint make clear it's instatement that he desires. Pl.'s Mem. [36-1] at 5 n.1. Defendants appear to accept this. Defs.' Mem. [33] at 8 (noting that Mackey is "requesting 'instatement'"). The Court does as well given that, taken as a whole, the Complaint makes clear it is instatement Mackey wants.

[2] Because the individual defendants were served at different times, they filed two motions to dismiss for two groups of individual defendants. The Court has compared Defendants' memoranda, Plaintiff's responses, and Defendants' replies, and they advance the same arguments mostly word for word (changing Defendants' names and adding one factual pattern about Defendant Pigott in the later filing). Thus, the Court will refer to the later-filed briefs for arguments as to both motions. *See* Defs.' Mem. [33], Pl.'s Mem. [36-1], and Defs.' Reply [37].

be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). Here, Defendants make a facial attack on jurisdiction without record evidence. The Court therefore limits its review to the allegations in the Complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Mackey bears the burden of proving that the Court has jurisdiction. *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

B. Rule 12(b)(6)

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

For this inquiry, "court[s] accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Thus, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Walker v. Beaumont Indep.*

4

*Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Ultimately, the standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

III.    Analysis

    A.    MCCB

Mackey sues MCCB under 42 U.S.C. § 1983.  Compl. [1] ¶ 33.  Section 1983 provides a private cause of action against any "person" who, "under color of" state law, deprives another of his federal rights.  Mackey says MCCB's decision to promote a less qualified white candidate violated two federal rights—the Equal Protection Clause and 42 U.S.C. § 1981.  *Id.*  Section 1981 creates a cause of action "against *private* employers to remedy discrimination in private employment contracts."  *Oden v. Oktibbeha County*, 246 F.3d 458, 462 (5th Cir. 2001) (emphasis added) (citing *Runyon v. McCrary*, 427 U.S. 160, 174 (1976)).

As MCCB notes, it is not a private employer.  But a plaintiff may "assert a cause of action . . . under § 1983 to remedy violations of civil rights under § 1981."  *Id.* (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)); *accord Crawford v. City of Houston*, 260 F. App'x 650, 652 (5th Cir. 2007) ("Section 1981 does not itself create a cause of action against a municipality; rather, a plaintiff complaining of a municipality's violations of § 1981 must assert his claims via § 1983.") (citations omitted).  And that is what Mackey pleaded, a § 1981 claim through § 1983.  *See* Compl. [1] ¶ 33.  Accordingly, all claims against MCCB flow through § 1983.

Under the Eleventh Amendment, "§ 1983 actions do not lie against a State." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 69 (1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). And a plaintiff cannot avoid that "bar by suing a state agency or an arm of the State rather than the State itself." *Williams v. Dall. Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001) (quoting *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997)).

MCCB claims to be an arm of the state of Mississippi and therefore entitled to Eleventh Amendment immunity. And though Mackey generally says the motion should be denied, he never addresses MCCB's Eleventh Amendment argument. In fact, his response to the individual defendants confirms that "MCCB is an arm of the state that oversees Mississippi's community college system." Pl.'s Mem. [36-1] at 6. Mackey has thus abandoned the claims against MCCB. *See Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 585 (5th Cir. 2021) (stating that claims are abandoned when party fails to substantively brief them) (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.")). In any event, MCCB's position seems correct.

Because MCCB is "protected by Eleventh Amendment immunity" from all asserted claims, the Court "lacks subject[-]matter jurisdiction." *Mahogany v. La. State Supreme Ct.*, 262 F. App'x 636, 636 (5th Cir. 2008) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007)). MCCB's Rule 12(b)(1) motion is granted, mooting its arguments under Rule 12(b)(6).

B.      Individual Defendants

Turning to the individual defendants, Mackey sued them in their individual and official capacities. They now argue that (1) the Eleventh Amendment bars the official-capacity claims for monetary damages; (2) the Eleventh Amendment bars Mackey's claim for instatement to

Executive Director; (3) Mackey employed shotgun pleading for the individual-capacity claims; and (4) qualified immunity otherwise bars the individual-capacity claims.

### 1. Official-Capacity Claims for Monetary Damages

Mackey asserts § 1983 claims against the individual defendants in their official capacities. But as with an arm of the state, Eleventh Amendment immunity extends to state officials sued in their official capacities. *See Will*, 491 U.S. at 71. Indeed, "[o]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). The individual defendants therefore argue that the Eleventh Amendment bars the official-capacity claims against them for money damages. Mackey never says otherwise, and Defendants are correct. *Id.* And even without the Eleventh Amendment defense, "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of [§ 1983] because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). The official-capacity claims for monetary damages against the individual defendants are dismissed.

### 2. Official-Capacity Claims for Prospective Relief

The parties agree that Mackey may sue the individual defendants for prospective relief under *Ex parte Young*. The question is whether *Ex parte Young* covers the relief Mackey seeks—front pay and instatement as MCCB's executive director. To answer that question, this Court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks &

citation omitted). Here, the relief sought is prospective, but the parties dispute whether Mackey alleges an ongoing violation.

The Eleventh Amendment bars claims for relief that "in essence serve[ ] to compensate a party injured in the past." *Papasan*, 478 U.S. at 278. Thus, *Ex parte Young* offers no help "if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Id.* (citing *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002)). By contrast, "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Id.* (citing *Milliken v. Bradley*, 433 U.S. 267, 289–90 (1977); *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)).

Starting with front pay, Mackey says those damages are recoverable prospective relief, citing *Julian v. City of Houston*, 314 F.3d 721, 729–30 (5th Cir. 2002). Pl.'s Mem. [36-1] at 5. But *Julian* involved a municipality, so the court never asked whether front pay remedies an ongoing violation under *Ex parte Young*. *Id.* The more apt case is *Jones v. Texas Juvenile Justice Department*, where the Fifth Circuit held that "the Eleventh Amendment bars [Plaintiffs] from recovering . . . front pay." 646 F. App'x 374, 376–77 (5th Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996)). *See also Webster v. Bd. of Supervisors of Univ. of La. Sys.*, No. 13-6613, 2015 WL 4459211, at *8 (E.D. La. July 21, 2015) (collecting cases). Mackey's front-pay claims are dismissed.

Instatement is different and raises a tougher question. Defendants make a plausible argument that the choice not to promote Mackey was a discrete past act that could create no ongoing violation. Defs.' Mem. [33] at 9. Their argument relies exclusively on *Cantu Services,*

*Inc. v. Roberie*, where an unsuccessful bidder for a government contract claimed that the state's bidding procedures violated due process. 535 F. App'x 342, 343 (5th Cir. 2013). As relief, the plaintiff sought an order granting it the contract the defendants had denied. *Id.* The *Cantu* court concluded that the alleged violation was not ongoing. *Id.* at 345. As the Fifth Circuit put it, the plaintiff had to show "the allegedly unconstitutional bidding process was not a 'one-time, past event' but an ongoing violation." *Id.* (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008). And because "[t]he award process terminated with the issuance of a new contract," no ongoing violation existed to which *Ex parte Young* would apply. *Id.*

Defendants say the decision to hire Smith instead of Mackey likewise reflects a one-time event like the one in *Cantu* with no ongoing violation. Defs.' Mem. [33] at 9 (citing *Cantu*, 535 F. App'x at 344). But *Cantu* reached its holding by distinguishing cases that are more analogous to Mackey's. *See Cantu*, 535 F. App'x at 344 (examining *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 323 (5th Cir. 2008); *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996)). In the public-employment context, the Fifth Circuit "has always treated *Ex parte Young* as an appropriate vehicle for pursuing *reinstatement* to a previous job." *Nelson*, 535 F.3d at 322–24 (concluding that reinstatement remedies an ongoing violation) (emphasis added). And "almost every circuit court has reached the same result." *Id.* at 322 (collecting cases). The *Cantu* court seemed skeptical of that logic but distinguished the public-bidding process at issue from the "special considerations surrounding public employment." 535 F. App'x at 345.[3]

Mackey's claim obviously relates to public employment. So, the question becomes whether the Court should treat his prayer for instatement the same as the Fifth Circuit would treat

---

[3] The *Cantu* court also noted that the plaintiff lacked a property or liberty interest in the contract it never received. *Id.* But unlike the *Cantu* plaintiff, Mackey pursues no due-process claims.

a reinstatement claim under *Ex parte Young* and *Nelson*. Neither the Fifth Circuit nor any other appears to have resolved that point. *See Smith v. Sec'y of Dep't of Env't Prot. of Penn.*, 540 F. App'x 80, 82 (3d Cir. 2013) (noting that "this is a close question to which neither the Supreme Court nor any of the circuits provides a clear answer" but remanding for further development in district court). Mackey acknowledges the lack of authority but notes in his response to MCCB that other district courts have treated instatement like reinstatement under *Ex parte Young*. *See* Pl.'s Mem. [36-1] at 5 (citing *Simpson v. State*, No. 4:13-CV-01450-SGC, 2016 WL 820946, at *7 (N.D. Ala. Jan. 15, 2016), *report and recommendation adopted in part sub nom. Simpson v. State of Ala. Dep't of Hum. Res.*, 2016 WL 808116 (N.D. Ala. Mar. 2, 2016)).

That's true, but not all cases reach the same conclusion. *Compare Kerce v. Fla. Dep't of L. Enf't/Capitol Police*, No. 4:16-CV-239-MCR-GRJ, 2017 WL 11504388, at *4 (N.D. Fla. Aug. 16, 2017) (finding no "reason to draw a distinction between reinstatement and instatement") (citing *Simpson*, 2016 WL 820946, at *7), *and Idlisan v. SUNY Upstate Med. Univ.*, No. 5:12-CV-01790-MAD, 2013 WL 495409, at *4 (N.D.N.Y. Jan. 16, 2013) ("His claim against Baldwin in her official capacity for the equitable remedy of instatement is not barred by the Eleventh Amendment."), *report and recommendation adopted*, 2013 WL 486279 (N.D.N.Y. Feb. 7, 2013), *with Moore v. Univ. of Memphis*, No. 10-2933-AJT-TMP, 2013 WL 6550185, at *8 (W.D. Tenn. Aug. 16, 2013) (finding failure to promote was not an ongoing violation), *report and recommendation adopted in part, rejected on other grounds in part*, 2013 WL 6550033 (W.D. Tenn. Dec. 13, 2013)

If given a blank slate, this Court might find that a failure to promote is a discrete act with no ongoing violation. But if reinstatement addresses an ongoing violation, then instatement seems to as well; both involve discrete decisions that leave someone without the desired job.

10

Indeed, *Nelson* cited *State Employees Bargaining Agent Coalition v. Rowland*, a Second Circuit case *Nelson* described as "concluding that harm caused by elimination of position was 'ongoing' for purposes of *Ex parte Young*." *Nelson*, 535 F.3d at 323 (citing 494 F.3d 71, 96–98 (2d Cir. 2007)). The Court follows those courts treating instatement and reinstatement the same. Defendants' motion is denied for the instatement claim.[4]

        3.        Individual-Capacity Claims

There are two main disputes over the individual-capacity claims: (1) whether the Complaint uses impermissible shotgun pleading and (2) whether Defendants are entitled to qualified immunity.

        a.        Shotgun Pleadings

Shotgun pleadings come in different flavors, but the "quintessential shotgun pleading" "fail[s] to distinguish between the actions of named defendants." *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014) (cleaned up) (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)). "This Court has repeatedly warned attorneys against such pleading practices" because they violate Federal Rule of Civil Procedure 8(a)(2). *Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP, 2015 WL 1482636, at *4 (S.D. Miss. Mar. 31, 2015) (collecting cases).

Defendants say Mackey's complaint fails that test because his only specific allegation about an individual defendant asserts that Pigott denied Mackey a meeting and asked for a write-up of his vision. Defs.' Mem. [33] at 12 (citing Compl. [1] ¶ 22). But the Complaint also says

---

[4] The differences between instatement and reinstatement are clearer when considering the merits. But this interlocutory Order merely examines whether the alleged violation is ongoing under *Ex parte Young*. On that point, Defendants' authority so far suggests no meaningful difference. This is, however, a complicated issue.

11

the MCCB unanimously voted to name Smith Executive Director.  Compl. [1] ¶ 30.  As Mackey argues, "each individual placed a singular vote to elect a candidate less qualified than [him]."  Pl.'s Mem. [36-1] at 9.  Because each Defendant cast a vote for Smith, Mackey has plausibly shown that they were "either personally involved in the deprivation or that [their] wrongful actions were causally connected to the deprivation." *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012) (citation omitted).  Mackey did not use shotgun pleading.

                b.        Qualified Immunity

The individual defendants seek qualified immunity for the claims asserted against them in their individual capacities.  Qualified immunity protects government officials from individual liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  When a defendant asserts qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  If qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).  To defeat an assertion of qualified immunity, a plaintiff must show "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

**Whether Defendants violated Mackey's rights.**  In considering the first prong of the qualified-immunity analysis, the Court asks "whether the facts alleged, viewed 'in the light most favorable to the party asserting the injury,' establish that 'the officer's conduct violated a

constitutional right.'" *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019)). According to Defendants, Mackey fails this test because he never pleaded that he was treated less favorably than a similarly situated comparator.

To begin, Defendants fail to explain why Smith is not a valid comparator for Mackey. In any event, they support their comparator argument with *Jackson v. City of Hearne*, 959 F.3d 194, 201–02 (5th Cir. 2020). *See* Defs.' Mem. [33] at 12. While *Jackson* does address the need to prove less-favorable treatment under the equal protection clause, that case did not involve employment discrimination. *Jackson*, 959 F.3d at 198–99.

In the employment context, the Fifth Circuit has held that a plaintiff does "not have to submit evidence to establish a prima facie case of discrimination at [the Rule 12] stage." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). He instead must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Id.*

The ultimate elements for a § 1981 claim match those under Title VII, which invokes *McDonnell Douglas* burden-shifting analysis. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The same is true for equal protection claims under § 1983. *See Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018) (applying *McDonnell Douglas* to equal protection claim). Thus, Mackey's claims fall under *McDonnell Douglas*.

*McDonnell Douglas* analysis begins with the plaintiff's prima facie case. And the Fifth Circuit has looked to that test to determine whether plaintiffs in similar cases plausibly stated a

13

claim under Rule 12(b)(6). *See Chhim*, 836 F.3d at 470; *accord Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018).

Under that test, a plaintiff can prove employment discrimination by direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). In circumstantial cases—like this one—the plaintiff must plead facts plausibly showing that

> (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)). And the ultimate question is "whether a defendant took the adverse employment action against a plaintiff *because of* her protected status." *Raj*, 714 F.3d at 331 (quoting *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004)).

The plaintiff in *Chhim* failed this ultimate test because he "plead[ed] no facts that suggest[ed] the applicant hired by the University was less qualified than Chhim or was similarly situated." *Chhim*, 836 F.3d at 471. By contrast, Mackey pleads facts plausibly supporting every element of his prima facie case and plausibly suggesting that he was not promoted because of his race. As noted above, he claims that he met every original qualification for the position whereas Smith met only one. He also states that even Smith admitted he was unqualified. The Rule 12(b)(6) standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary claims or elements." *Twombly*, 550 U.S. at 556. Mackey has plausibly pleaded a constitutional violation.

14

**Whether the law was clearly established.**  To overcome this prong, Mackey must show that the legal principle has "a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  In other words, "[t]he rule must be 'settled law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).  And that "means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (citation & quotation marks omitted).  "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citation omitted).  Finally, "this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Defendants say Mackey failed to identify any authority suggesting that "changing job eligibility criteria is a constitutional violation." Defs.' Mem. [33] at 17.  But that is not Mackey's claim; he claims that Defendants promoted a less-qualified white applicant because of race. *See* Compl. [1] ¶¶ 30, 33.  Changing the criteria may help prove the alleged discrimination, but that is not the claim.

The Fifth Circuit has recognized that race-based failure-to-promote claims are cognizable under § 1981. *See, e.g.*, *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021).  So too, "failure to promote an employee based on their membership in a protected class was constitutionally proscribed at the time of the purported misconduct." *Stark v. Univ. of S. Miss.*, 8 F. Supp. 3d 825, 838 (S.D. Miss. 2014) (citing *Irby v. Sullivan*, 737 F.2d 1418, 1431 (5th Cir. 1984)).  Therefore, at this stage, the individual defendants are denied qualified immunity as to the claims against them in their individual capacities.

V. Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the result. Defendant Mississippi Community College Board's motions to dismiss [8, 10] are granted with prejudice to refiling because the deficiencies cannot be cured.

The motions to dismiss by the individual defendants [19, 21, 32] are granted as to the official-capacity claims for damages, granted as to the official-capacity claims for front pay, denied as to the official-capacity claims for instatement, and denied as to the individual-capacity claims. The official-capacity claims for damages and front pay are dismissed with prejudice because the deficiencies cannot be cured. The parties are directed to contact United States Magistrate Judge F. Keith Ball to set the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 14th day of November, 2023.

                s/ *Daniel P. Jordan III*
                CHIEF UNITED STATES DISTRICT JUDGE