**VIA EEOC Electronic Portal and Email**

Barbara Fuller
EEOC Contact
Equal Employment Opportunity Commission
Jackson Area Office
100 West Capitol Street, Suite 338
Jackson, Mississippi 39269
barbara.fuller@eeoc.gob

  Re: *Shawn Mackey*, EEOC Charge No. 423-2023-00545

Dear Ms. Fuller:

  On June 1, 2023, Charging Party Shawn Mackey ("Charging Party" or "Mackey") filed a Charge of Discrimination listing his current employer as the Mississippi Community College Board ("Respondent" or "MCCB"). Please accept this as Respondent MCCB's Position Statement in the above-referenced matter.

  To put it plainly, Charging Party's Charge of Discrimination and his allegations of race discrimination are meritless. Charging Party was interviewed January 10, 2023, for the position of MCCB Executive Director and was not selected as the final candidate. There is no evidence of discrimination based on race—and there is no such evidence because none exists.

  For this reason, and the others discussed below, MCCB respectfully requests that the Commission dismiss Mackey's charge and issue a no-action letter in this matter.

## FACTUAL BACKGROUND

  The mission of the MCCB is to advance the community college system in Mississippi through coordination, support, leadership, and advocacy. Per Mississippi Code § 37-4-3:

> (1) From and after July 1, 1986, there shall be a Mississippi Community College Board which shall receive and distribute funds appropriated by the Legislature for the use of the public community and junior colleges and funds from federal and other sources that are transmitted through the state governmental organization for use by said colleges. This board shall provide general coordination of the public community and junior colleges, assemble reports and such other duties as may be prescribed by law.

MISS. CODE ANN. § 37-4-3(1); MISS. CODE ANN. § 37-4-3(6) (listing the "powers and duties of the Mississippi Community College Board").

1

Per Mississippi state law, MCCB is a non-state service entity. *See* MISS. CODE ANN. § 25-9-107(c)(vii) ("Nonstate service" means the following officers and employees excluded from the state service by this chapter. The following are excluded from the state service . . . (vii) All academic officials, members of the teaching staffs and employees of the state institutions of higher learning, the Mississippi Community College Board, and community and junior colleges;").

As such, the MCCB is not subject to the jurisdiction of the State Personnel Board, and Charging Party is not subject to civil service laws of the State of Mississippi. In other words, all employees of the MCCB (including Charging Party) are at-will employees.

Charging Party began his employment with MCCB in September 2007 as a program specialist employee in the MCCB office and now serves as the Deputy Director for Accountability located in Jackson, Mississippi.

On July 16, 2021, Dr. Andrea Mayfield abruptly resigned as MCCB Executive Director. The Board, by legislative authority, appointed Mr. Kell Smith to serve as Interim Executive Director. There is no record or indication that Mackey entered a rebuttal or request to serve in Interim capacity.

To the point of Mr. Smith's service as Interim Executive Director, it is not uncommon in state government to appoint an Interim Executive Director to serve until said entity vets an appropriate candidate. In 2015, Deborah Gilbert served five months as MCCB's Interim Executive Director at the retirement of Dr. Eric Clark. Gilbert did not hold a doctorate degree during this period of service. And as with any decision regarding the Executive Director position, it was the will of the Board that she lead the agency until an Executive Director could be hired. By additional state agency example, Melissa McGrath served as Interim Executive Director for the MS Department of Transportation for well over a year. McGrath would go on to serve as MDOT's Executive Director.

There is no policy or formal protocol for assigning the role of Interim Executive Director. Notably, at the time of Smith's appointment to Interim Executive Director, there were and remain three Deputy Executive Directors. Mackey, a black male; Jason Carter, a white male; and Dr. Rachel DeVaughan, a white female. To no exclusion, neither of the Deputies were selected to serve as Interim. If there were a call for precedent, Jason Carter as the Deputy Director of Finance, Deborah Gilbert's replacement upon her retirement, would have been asked to serve in Interim capacity.

Charging Party challenges that an unqualified white male was hired to the position of Executive Director. This assertion is incorrect. Smith met the qualifications as outlined in the job description as advertised. *See Exhibit A.* Charging Party alleges that Smith would not have qualified but for the revisions made to the job description.

The practice of modifying or updating job descriptions is encouraged and performed at all position levels of MCCB prior to advertising the respective position. The Executive Director's job description has been modified in each instance prior to the hire of the four preceding MCCB Executive Directors. *See Exhibits B and C.*

2

MCCB 000903

Respondent's act of altering the educational requirements of the job description did not exclude Charging Party as a potential candidate nor anyone in a protected category. This decision by and large, provided less restrictive criteria and enabled the Respondent to generate a larger pool of qualified applicants. The doctoral degree contributed to the appearance of a well-educated work force; however as the Board determined, a doctoral degree (broadly defined) is not necessary for the success of the agency as that level of education attainment did not provide a factual relationship to successful job performance. The Board determined that the past minimum requirement of a doctorate degree for the Executive Director position lacked business necessity. Logically, when considering the business necessity analysis, there is no supporting evidence to establish causal effect. The requirement of a doctoral degree does not meet the two-part test of business necessity and job relatedness.

As a rotating faction of gubernatorial appointees, the ten member Board itself cannot perpetuate discriminatory hiring practices as the makeup of the Board changes with each new appointment. MCCB board members, two representing each of Mississippi's five Congressional districts, appointed by the Governor and confirmed by the Mississippi Senate, serve six-year staggered terms. The Board's by-laws set a two-year term limit to the position of Board Chairman. Therefore, unless reappointed by the Governor, board members typically serve only once, during a tenure, in the role of Board Chairman.

The MCCB Executive Director serves at the will of the Board. From 1986 until present, there have been five Executive Directors prior to the hire of Smith. *See Exhibit D*. Arguably in a pattern or practice examination, the tenures of those Executive Directors have not presented the opportunity for multitudes of applicants to the position in the course of only a 36 year agency history.

When addressing the implication of systemic disparity, the analysis also measures board member tenure. The foremost consideration is that the Respondent's current board does not meet the quorum threshold of the previous Board. The board members remaining from the previous Board that oversaw hiring Mayfield (Mackey's first attempt to secure the Executive Director's position) represent less than a quorum of the current board. By numbers, only four board members of a ten member board remain from that of the previous Board. By all accounts of effective quorum decisions and approvals, this is a completely new board. *See Exhibit E*.

During the course of Charging Party's MCCB employment, he was promoted to several positions. *See Exhibit F*. He currently serves as Deputy Director for Accountability. The supervision of his work product and performance reviews were handled by his then immediate supervisor(s) and those reviews maintained in his personnel file. At no time was his work subject to review by the current MCCB Board; however, past Boards approved his promotions and raises by request of the respective past Executive Director. The practice of seeking board approval for promotions and staff raises was discontinued by Dr. Andrea Mayfield. By this, the current Board was able to view Mackey, Smith, and all additional applicants objectively according to the position advertisement, individual applications and interview performance.

Charging Party met the qualifications of the job description as did multiple applicants. It is not that Mackey was denied a promotion; simply, the vision and will of the current Board changed from that of the past Boards. Although employers have the leeway to make subjective

3

decisions, the Board's decision was based on the objective evaluation of Smith's qualifications, interview and his performance as Interim Executive Director.

In comparative analysis to the Institution of Higher Learning (IHL), the IHL Board first assumed its duties in 1944. This represents 74 years of operation prior to the hire of a black commissioner in 2018 as opposed to the 36 year history of MCCB. The inference that Charging Party should have been hired by now because IHL appointed its first black commissioner undermines and excludes the experience of Dr. Alfred Rankins, IHL's black Commissioner. Needless to say, it is not necessary here to justify IHL's appointment of Dr. Rankins. Nevertheless, it will be noted that Dr. Rankins was not hired because of race. Prior to being named Commissioner, Dr. Rankins served as the 19th president of Alcorn State University. His experiences within the IHL system and his tenure as a President were the contributing factors to his hire. Dr. Rankins' various roles in the IHL Executive Office included, deputy commissioner, associate commissioner for academic and student affairs, and director of academic affairs. While serving as deputy commissioner, Dr. Rankins also served as acting president of Mississippi Valley State University. Additionally, prior to his appointment at IHL, Dr. Rankins served on the faculty at Mississippi State University (MSU), where he was a tenured associate professor in the College of Agriculture and Life Sciences and extension specialist with the MSU Extension Service.

At the outset, Charging Party has not identified any employment policy or practice that significantly and effectively achieves disparate impact, nor demonstrates discriminatory exclusions. Title VII does not require race-based hiring simply because there has been a racially imbalanced component.

Racial diversity is well represented at all levels of the Board staff. Comparatively and statistically, the level of minority hiring disparity for the position of Executive Director is relatively low with regards to the comparable position of the Commissioner for the Institute of Higher Learning. It is not that a black person has never served as the Executive Director of MCCB, as stated by Charging Party. A more statistically accurate statement is that a black person has not yet been selected. MCCB challenges the existence of the inferred disparate impact by challenging the verity or significance of Charging Party's circumstantial statistics. The standard, which the Respondent reaffirms, for board hires and the practice of revising job descriptions is justified because it is consistent with non-discriminatory employment and business practices.

Additionally, it is not the practice nor a requirement that the Board notify a candidate as to specifics for hiring decisions and no exception would be made to provide additional information to Charging Party.

MCCB 000905

## REASON FOR DISMISSAL OF THE CHARGE

Title VII and the EEOC exist for a reason: they serve as a shield to protect the rights our citizens have conveyed as employees not to be subjected to race discrimination (among other forms of discrimination). An employee or former employee, however, also can use it as a sword to strike back at an employer against whom he holds a grudge or to seek job advancement to which he otherwise is not entitled.

**Race Discrimination.** To state a prima facie claim of race discrimination under Title VII, a plaintiff must put forward evidence suggesting an impermissible discriminatory animus on the part of the employer. *See, e.g., St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Animus can be shown either through direct evidence, or through indirect circumstantial evidence under the well-known *McDonnell Douglas* test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Charging Party offers neither.

First, Charging Party offers no direct evidence of discrimination and, obviously, there is no direct evidence of racial animus here. Second, there is no circumstantial evidence of unlawful discrimination, and the allegations cannot prevail under the *McDonnell-Douglas* burden shifting framework. *See McDonnell Douglas*, 411 U.S. 792.

*McDonnell-Douglas*' requirements are familiar: A plaintiff must first make out a prima facie case of discrimination. Then, if that is accomplished, the employer must articulate a legitimate, nondiscriminatory reason for its action. Finally, after the legitimate, nondiscriminatory reason is stated, the plaintiff must offer proof that the employer's articulated explanation was pretextual or that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Id.* The ultimate burden of persuasion, at all times, remains with the plaintiff.

In fact, Charging Party cannot state a prima facie case under *McDonnell-Douglas*. To establish a prima facie case of discrimination involving the type of hiring claim Charging Party asserts, a plaintiff must prove that he is "(1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Carr v. Murphy Oil USA Inc.*, 269 Fed. Appx. 378, 378 (5th Cir.2008) (per curiam) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir.2005)). Here, Charging Party cannot demonstrate the latter two prongs.

The Fifth Circuit Court of Appeals has "consistently limited 'adverse employment action' ... to acts which effect compensation, duties, and benefits." *McKay v. Johanns*, 265 F. App'x 267, 268-69 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)). Here, the 2023 decision not to hire Charging Party was not a demotion or otherwise an adverse employment decision. Charging Party's pay was not altered and his benefits were not changed. Charging Party also continues to work in the agency full time. Moreover, he was not removed from a supervisory role.

Yet even assuming, *arguendo*, Charging Party could satisfy a prima facie case for purposes of Title VII, there indisputably was a legitimate, nondiscriminatory reason for modifying the Executive Director's job description. What's more, Charging Party is familiar with the hiring

MCCB 000906

process and Charging Party has not been treated differently from others similarly situated. *E.g., Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 360 (5th Cir. 2013) (generalized statements of less-favorable treatment are insufficient to establish disparate treatment); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir.1997); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009).

Here, any claim by Charging Party that he was discriminated against based on race would fail under settled law, as there is no evidence or pretext that race was a motiving factor in any decision by the Respondent. Consequently, any Title VII discrimination action is a non-starter.

## CONCLUSION

In sum, there is no evidence to support the discrimination violation alleged by Charging Party in his EEOC Charge. The MCCB further submits that it does not condone discrimination against any of its employees, with the present matter being no exception. Accordingly, the MCCB respectfully submits that, under both facts, and the law, a determination of *no cause* is warranted in this matter.