# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**SHAWN MACKEY**                                                                **PLAINTIFF**

**v.**                                  **CIVIL ACTION NO. 3:23-cv-00233-DPJ-ASH**

**JOHN PIGOTT; ET AL.**                                       **DEFENDANTS**

## MEMORANDUM BRIEF IN SUPPORT OF
## MOTION TO ENFORCE SETTLEMENT AGREEMENT

COMES NOW, Defendant, The Mississippi Community College Board ("MCCB" or "Defendant"), by and through counsel, and respectfully submits its Memorandum Brief in support of its Motion to Enforce the Settlement Agreement with Plaintiff, Shawn Mackey ("Mackey" or "Plaintiff"), as follows:

### I. INTRODUCTION

The parties entered into a binding settlement agreement which was read into the record following a settlement conference with this Court on August 8, 2025. A material term agreed upon and announced to the Court required a portion of the settlement funds to be paid subject to a Legislative budget deficit appropriation. MCCB never guaranteed payment of this part of the settlement. The Court should enforce the settlement agreement as agreed by the parties, including only those material terms governing payment of the settlement amount recited on the record.

### II. BACKGROUND

Until it was resolved, this case concerned Mackey's claim of race discrimination in violation of Title VII against MCCB, and claims against each of MCCB's Board

members for various Constitutional violations. The Court dismissed all Individual Defendants at summary judgment, leaving only the Title VII claim against the agency.

SETTLEMENT AGREEMENT

During the morning of August 8, 2025, at 9:00 AM, the parties held a pretrial conference before this Court. The parties then held a settlement conference before Magistrate Judge Harris on that same day beginning around 10:00 AM. The settlement conference resulted in a settlement agreement between the parties to dismiss this matter with prejudice. The parties read into the record all material terms that were agreed upon:

> MS. DOWDLE: The parties have agreed to resolve this matter for a total of $250,000, <u>$100,000 of which is subject to legislative budget deficit approval</u>. Plaintiff will telework until he reaches 25 years of service, upon which time he will retire. He will apply 1.5 years of his accrued leave to this time. Plaintiff will comply with all applicable telework policies and any future amendments thereto. However, no amendment will be punitive or made in bad faith. Plaintiff will comply with all policies in the Mississippi State Employee Handbook and all policies in the MCCB Handbook and internal policies. This is not a contract for employment or a guarantee of future employment. Both consolidated cases will be dismissed with prejudice, and all of these terms will be reduced to a writing in a settlement agreement and release.
>
> . . . .
>
> THE COURT: … The material terms of the settlement having been read into the record, and having established under oath that both sides understand and agree to these terms, and that these are the only material terms of the settlement, the parties are hereby entering, knowingly and voluntarily, into a settlement, and I declare that this case has been settled.

Exh. "A", 3:23-4:13, 8:15-20 (emphasis added).

On August 11, 2025, this Court entered its Order of Dismissal [211], whereby the Court, in recognition of the settlement agreement entered into by the parties,

dismissed this case with prejudice except to retain jurisdiction over enforcement of the settlement agreement at issue.

PROCEEDINGS AFTER THE SETTLEMENT AGREEMENT

- On August 20, 2025, counsel for MCCB emailed the first draft of the written settlement agreement to Mackey's counsel for review. Exh. "C". The payment provision at Paragraph 5 reflected that the $250,000 settlement amount would be payable as: (A) $150,000 via check within 30 days of the executed settlement agreement; and (B) as relevant herein, $100,000 through a budget deficit appropriation request from the State Legislature. Paragraph 5(B) provided:

  > … through a budget deficit appropriation from the State of Mississippi Legislature that will be requested for consideration in the 2026 legislative session for said Confidential Settlement Agreement and Release. **It is expressly understood and agreed, however, that this payment amount of the Confidential Settlement Agreement and Release is subject to authorization and funding by a budget deficit appropriation from the State Legislature. Failure of the State Legislature to fund the ONE HUNDREND THOUSAND AND NO/100 DOLLARS payment *does not void* the remaining terms of this Settlement Agreement and Release.**

  Exh. "C", ¶5(B) (emphasis in original) (hereinafter, "Paragraph 5(B)").

- On August 22, 2025, Mackey's counsel emailed about revisions to the first draft of the written settlement agreement, as well as additional terms and conditions not agreed upon by the parties. Exh. "D", pp. 3-4. Particularly, Mackey attempted to negotiate additional material terms to Paragraph 5(B):

  > Please add language to the settlement agreement that provides that MCCB still will be liable for the remaining $100,000.00 even if the Legislature does not fund the agency's request for the $100.000.00. "Should the budge[t] deficit appropriation not be approved by the State Legislature, Mackey's personal leave/time (1.5 years) will be restored and the requirement to leave MCCB will be extended to 25 years of service

3

> and MCCB will pay Mackey $25,000.00 in annual payments over a four year period from MCCB's annual budget."

Exh. "D", p. 3.

- On August 27, 2025, MCCB responded rejecting the additional term, explaining "I cannot include the requested language. We clearly discussed this when we met in the witness room prior formalizing the terms on the record." Exh. "D", p. 2. MCCB also sent a revised second draft of the written settlement agreement to Mackey's counsel, which contained the same Paragraph 5(B) term regarding MCCB's budget deficit appropriation request. Exh. "D", ¶ 5(B).

- Then, on September 4, 2025, Mackey's counsel emailed further revisions to the written settlement agreement, and again attempted to impose an additional payment obligation/guarantee over the budget deficit appropriation Paragraph 5(B). Specifically, Mackey wanted "language that MCCB will fund the settlement if the Legislature does not fund it; or the settlement is void." Exh. "E". MCCB again rejected this post-settlement term.

- Later that day, on September 4, 2025, MCCB counsel and Mackey's counsel scheduled a conference call for September 5, 2025, to resolve any pending issues with the written settlement agreement. Exh. "F". On September 5, 2025, this conference call took place which was memorialized via email. Exh. "G", pp. 3-5. MCCB counsel offered an alternative to resolve the pending issue, whereby Mackey could either (1) accept the settlement money as written in Paragraph 5, or (2) deposit $150,000 of the settlement money with the Court's registry until the

4

remaining $100,000 budget deficit appropriation is approved by the State Legislature. *Id.* Mackey's counsel summarized these options as follows:

> Legislative approval of $100k settlement balance – The Board cannot legally guarantee funding of the settlement balance if not approved by the legislature. Two options in the event the improbable occurs:
> - Accept the $150k and trust that the legislative approval process plays out as expected
> - Place $150k in registry until the remaining $100k is approved. This would necessitate requesting that the Court stay the case and place the funds with the Court's Registry pursuant to Rule [67], until the legislative process is complete.

*Id.*, pp. 4-5. MCCB counsel further explained it could not fund the $100,000 budget deficit appropriation if, in the unlikeliest scenario, it is not approved by the State Legislature:

> As to your question, when a State agency does not have settlement funds in their existing budget, it **must** be done as a deficit request. Here, MCCB was fortunate to have the $150,000 in its existing budget, but it does not have enough to cover the additional $100,000. Since the settlement is an unexpected expense and all State agencies must have a balanced budget, it requires a deficit appropriation since the $100,000 was incurred in this fiscal year and was not budgeted for. *See* Miss. Code Ann. § 27-104-231. Also, practically speaking, MCCB cannot simply ask for an additional $100,000 in general funds and hold that in trust for the Mackey settlement. The agency is prohibited from doing that. Again, unless a State agency has the funds in their existing budget, **all** settlements with State agencies must be funded by a deficit appropriation.

*Id.*, pp. 3-4 (emphasis in original).

- On September 18, 2025, MCCB counsel followed up with Mackey's counsel regarding whether he wanted to accept the settlement money as written in Paragraph 5 or deposit it with the Court's registry until the budget deficit appropriation is approved. MCCB counsel also insisted that Mackey start

5

teleworking immediately as per the undisputed terms of the settlement agreement. Exh. "G", pp. 1-2.

- On September 19, 2025, Mackey's counsel advised that Mackey would accept payment of the settlement money as written in Paragraph 5:

    > With respect to the settlement pay out and $100,000 deficit appropriation, <u>Dr. Mackey has agreed to the terms previously reached by the parties</u>.
    > . . . .
    > <u>Dr. Mackey agrees</u> to receive a cash payment check of $150,000, <u>with the remaining $100,000 balance to be paid after budget deficit appropriation approval</u>.

    Exh. "H", pp. 2-4 (emphasis added).

- On September 25, 2025, MCCB's counsel forwarded the final revised written settlement agreement. Exh. "I". In accordance with the material terms agreed upon on 8/8/25 in Court, and confirmed by Mackey on 9/19/25, the Paragraph 5(B) payment provision remained the same as written with an additional clarification at the end:

    > … through a budget deficit appropriation from the State of Mississippi Legislature that will be requested for consideration in the 2026 legislative session for said Confidential Settlement Agreement and Release. **It is expressly understood and agreed, however, that this payment amount of the Confidential Settlement Agreement and Release is subject to authorization and funding by a budget deficit appropriation from the State Legislature. Failure of the State Legislature to fund the ONE HUNDREND THOUSAND AND NO/100 DOLLARS payment <u>*does not void*</u> the remaining terms of this Settlement Agreement and Release. If the State Legislature does not fund the $100,000 payment, SHAWN MACKEY may not collect said amount directly from MCCB nor any MCCB Board Members.**

    Exh. "I", ¶ 5(B) (emphasis in original).

6

- On September 26, 2025, Mackey informed MCCB that "Dr. Mackey will not sign the document as drafted." Exh. "J". Mackey's counsel explained:

  > I know we have discussed ad nauseum how unlikely or improbable it is that the State Legislature will not approve the additional $100,000 settlement payment. The Release as fashioned, however, leaves him without any assurance that the entirety of the sum the parties agreed upon to settle this dispute will ever be satisfied by the Defendants. The legislative process could allow MCCB to circumvent fulfilling their end of the bargain.

  *Id*.

- Later that same day, on September 26, 2025, MCCB counsel contacted the Court for a transcript of the terms of the settlement read into the record. The transcript was completed on October 6, 2025. *See* [212].

- From 8/11/25 until the present, Mackey has continued to report to work in person and has refused to telework as agreed by the parties on 8/8/25.

### III.   LEGAL STANDARD

The Fifth Circuit "ha[s] long recognized a district court's inherent power to recognize, encourage, and when necessary enforce parties' settlement agreements." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (quotations omitted). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971). "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 392 (5th Cir. 1984).

"Questions regarding the enforceability or validity of such agreements are determined by federal law— at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co.*, 733 F.2d at 389. "This principle is especially well-established in Title VII cases[.]" *Del Bosque v. AT & T Advert., L.P.*, 441 F. App'x 258, 260 (5th Cir. 2011). " 'Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally.' " *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *E. Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988)).

Under federal law, "[a] settlement agreement is a contract." *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). "A binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Chambers v. American Family Ass'n*, No. 1:23-cv-118-SA-DAS, 2024 WL 5085971, at *2 (N.D. Miss. Nov. 20, 2024) (quotations and citation omitted). "Under federal law, agreements to settle Title VII claims must be entered into voluntarily and knowingly." *Harmon v. J. Pub. Co.*, 476 F. App'x 756, 757 (5th Cir. 2012). "Such settlements are not required to be reduced to writing and oral settlement agreements are enforceable." *Id.* "Parties frequently orally agree to settle lawsuits and later reduce their agreement to settle to writing after negotiation between counsel and consultation with their respective clients." *Chambers v. American Family Ass'n*, 2024 WL 5085971, at *2 (N.D. Miss. Nov. 20, 2024) (citing

8

*Daftary v. Metro. Life Ins. Co.*, 136 F.3d 137 (5th Cir. 1998)). "In instances where a party then refuses to sign the settlement agreement reflecting the terms orally agreed to, the court is correct to enforce the settlement agreement." *Id.*

Likewise, "[s]ettlement agreements are contracts made by the parties, upon consideration acceptable to each of them, and the law will enforce them." *Chantey Music Pub., Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1056 (Miss. 2005). Courts "appl[y] contract law to negotiated settlement agreements." *Estate of Davis v. O'Neill*, 42 So. 3d 520, 527 (Miss. 2010). "Generally, an enforceable contract consists of an offer, an acceptance of that offer, and consideration." *Estate of Davis*, 42 So. 3d at 527. Contract interpretation is "a question of law" in which a court must "determine whether a contract is ambiguous and, if not, enforce the contract as written." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751 (Miss. 2003). "The law of this State recognizes both oral and written contracts." *Parmley v. 84 Lumber Co.*, 911 So. 2d 569, 573 (Miss. Ct. App. 2005). "Moreover, the law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." *Chantey Music Pub., Inc.*, 915 So. 2d at 1055.

### IV. ARGUMENT / AUTHORITY

**1. THE SETTLEMENT AGREEMENT AND ITS MATERIAL TERMS RECITED ON THE RECORD IS BINDING ON THE PARTIES.**

" 'It is elementary that when two parties come to a meeting of the minds, announce to the trial court that an agreement or settlement has been reached, and then recite the details of that agreement to the court on record, a settlement has been

9

formed.'" *Estate of Alexander by & through Alexander v. DLJ Mortg. Cap., Inc.*, No. 3:15-cv-293-TSL-RHW, 2017 WL 9512369, at *2 (S.D. Miss. Aug. 28, 2017) (quoting *Carroll v. Henry*, 798 So.2d 560, 561 (Miss. Ct. App. 2001)).

> It is well-established that an oral settlement agreement is binding on the parties, particularly when the terms are memorialized into the record. In fact, a settlement stated on the record is one of the strongest and most binding agreements in the field of the law and is thus entitled to substantial deference. As noted by federal courts in this district, a meeting of the minds and acceptance of an agreement could be inferred where the parties to a settlement announce in court that an agreement has been reached and subsequently read the agreement into the trial court record.

*Gates v. City of Biloxi, Mississippi*, No. 1:22-CV-356-LG-RPM, 2024 WL 289354, at *3 (S.D. Miss. Jan. 25, 2024) (internal citations and quotations omitted). "Furthermore, a settlement is valid and enforceable even if it contemplates the parties signing a release at a later date …." *In re DEEPWATER HORIZON*, 786 F.3d 344, 355 (5th Cir. 2015) (quotations omitted). "Even if one party ultimately fails to execute or sign the final formal release documents, that does not void the original agreement or render it deficient from the outset." *Id.*

In the present case, the parties through their retained counsel announced the settlement, and the terms were recited into the record. The recorded recitations are controlling. Therefore, a valid and binding settlement agreement was formed when recorded in the transcript at the close of the August 8th settlement conference, and the agreed-upon material terms of the settlement agreement are enforceable as recited on the record. Exh. "A". The material terms of the settlement agreement stated on the record included:

    A. Dismissal of the consolidated lawsuits with prejudice.

    B. Settlement of the matter for a total amount of $250,000; and $100,000 of which to be subject to a legislative budget deficit appropriation.

    C. Mackey may continue working at MCCB by teleworking pursuant to applicable policies governing same, until he reaches 25 years of state service with 1.5 years of accrued unused leave applied to reach this 25-year mark. However, this is not a contract of employment or guarantee of future employment, and any future amendments to applicable telework policies will not be punitive or made in bad faith.

Exh. "A", pp. 3-4. All the material terms announced to the Court were to be reduced to a writing in a settlement agreement and release. Exh. "A", p. 4. The foregoing material terms are reflected and reduced to writing in the final Settlement Agreement and Release provided by MCCB counsel. Exh. "B"; *see also* Exh. "I".

Further, on August 8, 2025, Mackey was sworn in and testified to understanding the recited material terms of the settlement agreement, including that part of the settlement amount would be "subject to a legislative budget deficit approval":

| | |
|---|---|
| THE COURT: | … Mr. Mackey, were you present just now when the material terms of the settlement were just announced by Ms. Dowdle? |
| DR. MACKEY: | Yes. |
| THE COURT: | And did you hear all the material terms of the settlement? |
| DR. MACKEY: | Yes. |
| THE COURT: | And do you understand all of those material terms? |
| DR. MACKEY: | Yes. |
| THE COURT: | Do you have any questions? |
| DR. MACKEY: | No, sir. |

| | |
|---|---|
| THE COURT: | Do you agree that these are the material terms of the settlement? |
| DR. MACKEY: | I do. |
| THE COURT: | All right. Has anyone forced you to settle today, Mr. Mackey -- excuse me -- Dr. Mackey? |
| DR. MACKEY: | No. |
| THE COURT: | Has anyone coerced you to settle? |
| DR. MACKEY: | No. |
| THE COURT: | Are you agreeing to settle as a free and voluntary decision? |
| DR. MACKEY: | Yes. |
| THE COURT: | Has anyone promised you anything beyond what's in the terms stated today to induce you to settle? |
| DR. MACKEY: | No. |
| THE COURT: | Do you understand that dismissal with prejudice means the suit will be over forever? |
| DR. MACKEY: | Yes. |
| THE COURT: | Do you understand that release means that you can't refile these claims again? |
| DR. MACKEY: | Yes. |
| THE COURT: | All right. Having heard all of that, do you have any questions? |
| DR. MACKEY: | No, sir. |
| THE COURT: | Okay. And again, do you believe these are the material terms of the settlement? |
| DR. MACKEY: | Yes. |
| THE COURT: | Is there anything you are aware of today about your mental or physical health that would impair your ability to understand what is happening today? |
| DR. MACKEY: | No. |

Exh. "A", 5:7-6:22. Mackey's counsel even confirmed via email on September 19, 2025, that he agreed on August 8th that part of the settlement agreement would be subject to a legislative budget deficit appropriation approval, as reflected in Paragraph 5(B). Exh. "H", pp. 2-4.

Mackey's "current dissatisfaction with the deal that he made with [MCCB] and [his] refusal to sign the settlement documents do not constitute a basis for releasing him from his bargained-for agreement." *Wells v. Millsaps College*, No. 3:20-cv-115-

12

TSL-RPM, 2021 WL 6882378, at *2 (S.D. Miss. Aug. 17, 2021). Further, Mackey's "later dissatisfaction ... does not relieve Plaintiff of his sworn statement agreeing to the terms of the settlement." *Estate of Alexander*, 2017 WL 9512369, at *2.

**2. THE SETTLEMENT AGREEMENT SHOULD BE ENFORCED ACCORDING TO THE AGREED MATERIAL TERMS RECITED ON THE RECORD.**

In contrast to the agreement recited before the Court at the August 8th settlement conference, Mackey now seeks to impose an additional obligation over the agreement for payment of part of the settlement agreement subject to Legislative budget deficit appropriation. Without any support from the record, Mackey contends that MCCB must additionally guarantee or ensure funding of this settlement amount on behalf of the Mississippi Legislature. Contrary to Mackey's argument, the record reflects that this $100,000 payment is contingent upon the Mississippi Legislature appropriating these funds as a budget deficit for MCCB.

"A settling party ... may not assert ambiguity to undo the settlement when the record contains an agreement that is clear on its face." *Gates*, 2024 WL 289354, at *4 (quotations and citation omitted). "Courts will not rewrite [settlement agreements] to satisfy the desires of either party." *Chantey Music Pub., Inc.*, 915 So. 2d at 1056. "The terms as read into the record must be enforced." *Gates*, 2024 WL 289354, at *4 (citing *Estate of Alexander*, 2017 WL 9512369, at *2).

The statements by the parties of the material terms memorialized in the Court record constitute a settlement agreement which is both unambiguous and enforceable. It was a material term of the settlement agreement that $100,000 of the total settlement amount was "subject to" the Mississippi Legislature's approval of MCCB's

13

budget deficit appropriation request. Exh. "A", pp. 3-4. The phrase "subject to" is neither vague nor ambiguous, and nothing in the controlling record suggest it means anything other than its plain and ordinary meaning of "contingent upon" or "depending upon." Black's Law Dictionary defines the term to mean "[d]ependent on or exposed to (some contingency)." "SUBJECT", BLACK'S LAW DICTIONARY (12th ed. 2024). The Fifth Circuit has explained, "'[s]ubject to' means 'likely to be conditioned, affected, or modified in some indicated way [, and] having a contingent relation to something usually dependent on such relation for final form, validity or significance.'" *Cedyco Corp. v. Petroquest Energy, LLC*, 497 F.3d 485, 489 (5th Cir. 2007) (quoting Webster's Unabridged Dictionary 2275 (3d ed. 1993)); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 412 (5th Cir. 2009). Since payment of $100,000 is "subject to" Legislative approval, said Legislative approval is a condition precedent to the payment of these funds. *Cedyco Corp.*, 497 F.3d at 488-89; *Mullins*, 564 F.3d at 412. "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Mullins*, 564 F.3d at 412 (quotations omitted). The Fifth Circuit has expressly held "[t]he phrase, 'subject to' is also sufficiently conditional to create a condition precedent." *Id.* (citing *Cedyco Corp.*, 497 F.3d at 488-89).

As such, payment of the $100,000 budget deficit appropriation request is subject to Legislative approval which must take place as a condition precedent to payment of this amount. MCCB's payment obligation at issue requires it to request Legislative approval of the budget deficit appropriation, which will fund $100,000 of the settlement if and when approved. This obligation on the record is plain and clear, and

14

no additional obligation can be implied or inferred. None of the recited terms of record support that funding of the $100,000 would come from any other source besides an approved budget deficit appropriation by the Legislature to MCCB to pay that part of the settlement agreement.

Mackey cannot unilaterally read into the record additional terms or obligations that were neither agreed upon nor recited by the parties on August 8, 2025. " 'Any additional terms in the settlement agreement or terms inconsistent with the agreement in the record are not material to the agreement and are unenforceable.' " *Schmidt v. Sidibe*, No. 2:18-CV-164-KS-MTP, 2019 WL 13293259, at *1 (S.D. Miss. Oct. 30, 2019) (quoting *Estate of Alexander*, 2017 WL 9512369, at *2); *see also Sundown Energy, L.P*, 773 F.3d at 614 (holding "the district court erred when it interpreted the settlement agreement to include those items not mentioned during the parties' oral recitation of the settlement agreement[,]" and instead "should have found the settlement agreement to encompass only those matters expressly stated" and "read into the record by the parties.").

The record simply does not provide any term or agreement consistent with any invented obligation for MCCB to guarantee funding of the part of the settlement amount subject to Legislative approval ($100,000). Clearly, MCCB is incapable of even offering any guarantee or assurances on behalf of the Mississippi Legislature. Rather, MCCB could only agree to direct payment of the other part of the settlement amount ($150,000) with funding currently available from its present budget. The time for

15

negotiation of material terms ended when recited on the record at the conclusion of the August 8th settlement conference.

## V.   CONCLUSION

MCCB respectfully requests this Honorable Court to enter an Order to enforce the settlement agreement according to the terms agreed upon on August 8th, in the form attached as Exhibit "B."

RESPECTFULLY SUBMITTED, this the 7th day of October, 2025.

**THE MISSISSIPPI COMMUNITY COLLEGE BOARD**, *Defendant*

**LYNN FITCH, ATTORNEY GENERAL STATE OF MISSISSIPPI**

*/s/ Will Ivison*
WILLIAM C. IVISON
Special Assistant Attorney General
Mississippi Bar No. 104213

Lindsay Thomas Dowdle (MSB #102873)
Quentin A. Daniels (MSB # 10408)
Will Ivison (MSB #104213)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.:   (601) 359-3020
        (601) 359-4242
        (601) 359-4245
Fax:   (601) 359-2003
Email: Lindsay.Dowdle@ago.ms.gov
        Quentin.Daniels@ago.ms.gov
        Will.Ivison@ago.ms.gov

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system, which has provided notice to all counsel of record.

SO CERTIFIED, this the 7th day of October, 2025.

/s/ *Will Ivison*
WILLIAM C. IVISON (MSB #104213)
Special Assistant Attorney General